KC **F I L E D**

DEC 8 0 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KOVITZ SHIFRIN NESBIT, P.C., an )
Illinois Professional Corporation, )
                 Plaintiff, )
                 )
    v. )
                 )
RAINMAKER SOFTWARE, INC., a )
Delaware corporation, )
                 )
              Defendant. )

# 05C 7311

No.

**TRIAL BY JURY
DEMANDED** "JUDGE ZAGEL"

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

## COMPLAINT

NOW COMES the Plaintiff, Kovitz Shifrin Nesbit, P.C., an Illinois Professional

Corporation, pro se, and for its Complaint against Rainmaker Software, Inc., states as

follows:

### GENERAL ALLEGATIONS

#### Parties

1.     Kovitz Shifrin Nesbit, P.C. ("KSN") is an Illinois Professional

Corporation consisting of approximately thirty attorneys, whose principal place of

business is in Buffalo Grove, Illinois.

2.     RainMaker Software, Inc. ("RainMaker") is a Delaware corporation,

which purports to be a legal technology company whose principal place of business is in

Blue Bell, Pennsylvania.

3.     Computer Law Systems, Inc. ("Computer") was a provider of legal

software which was merged into RainMaker in December of 2004.

## JURISDICTION

4.     Jurisdiction of this Court is based on Title 28 USC, Section 1332 in that there is a diversity of citizenship of the parties and an amount in controversy which exceeds $75,000.00 exclusive of interest and costs.

5.     Moreover, with regard to personal jurisdiction, RainMaker and Computer, the company which merged into RainMaker, conducted business in the Northern District of Illinois, and specifically, conducted business and sent its employees into the Northern District of Illinois to KSN's place of business.

## VENUE

6.     Venue is in this District based upon Title 28 USC, Section 1391(a) in that RainMaker does business in the Northern District of Illinois and undertook the contracts which are the subjects of this Complaint and committed the acts which are the subject of this Complaint in the Northern District of Illinois.

7.     KSN is located in the Northern District of Illinois.

## FACTS COMMON TO COUNTS I AND II

8.     On or about the 26th day of October, 2004, KSN entered into written contracts with Computer, now known as RainMaker, and hereinafter referred to as RainMaker, wherein RainMaker was to undertake the following:

a.     RainMaker was to furnish KSN a comprehensive package of software products, including but not limited to, database management, conflict checking, docketing and calendar services, case management, file management, time and billing management, accounts payable management, general ledger, trust accounting and collection accounting, all to be integrated with document management (iManagement

- 2 -

348336\1

software), word processing (Microsoft Word), scheduling (Microsoft Outlook), products among other items. In addition to the foregoing, RainMaker was to create for KSN specific docket reports and work with KSN's personnel to accommodate an online client access, all as more particularly described by the executed contracts, copies of which are marked Exhibit "A", attached hereto and made a part of this Complaint herein.

b. In addition to the Exhibit "A" Agreements, KSN and RainMaker entered into a written Add-On Products and Services Purchase Agreement on or about February 11, 2005, as augmented by an additional written Agreement dated April, 2005, to facilitate the use of the products all as previously described and as previously purchased by KSN from RainMaker. Copies of said Agreements are marked Exhibit "B", attached hereto and made a part of this Complaint herein.

9. During the period January 16, 2005 to January 20, 2005, RainMaker's employee, Todd Lotzer, performed on-site work at KSN's premises wherein he prepared design templates needed by KSN to service its Community Association clients.

10. During the foregoing period, certain KSN personnel noted that the RainMaker goods and products were deficient in speed and performance as compared to KSN's previous experience with the software products which the RainMaker goods were replacing. KSN was informed that this was due to the use of Todd Lotzer's laptop computer, rather than a network server.

11. During the periods April 4, 2005 to April 8, 2005, April 18, 2005 to April 22, 2005 and May 23, 2005 to May 29, 2005, RainMaker employees Todd Lotzer and Scott Aston were on-site at KSN premises training KSN employees, converting KSN data and implementing the installation of RainMaker's software for the use of KSN on KSN's

- 3 -

computer hardware. By the end of May, 2005, KSN's previous software systems were replaced by RainMaker's goods.

12.     By August 25, 2005, KSN had paid RainMaker $106,494.89 per Exhibit "A" and Exhibit "B", the contracts for RainMaker's goods and services.

13.     As hereinafter alleged, RainMaker's goods are deficient and for KSN's purposes unusable despite RainMaker's promises and representations to the contrary.

## COUNT I

## BREACH OF CONTRACT

14.     KSN realleges and incorporates by reference paragraphs 1-13 inclusive of this Complaint as paragraphs 1-13 of this Count I as though fully set forth herein.

15.     Per paragraph 8 of the Exhibit "A", 2742 contract, RainMaker expressly warranted that its software would work on KSN's hardware. RainMaker's software goods did not "work".

16.     RainMaker's a merchant with respect to the goods sold to KSN.

17.     The goods RainMaker sold to KSN were not fit for the ordinary purposes for which the goods are used and were to be used.

18.     The goods RainMaker sold to KSN were to RainMaker's knowledge required by KSN to be used for a variety of accounting and management purposes. RainMaker knew that KSN was relying on RainMaker's skill and/or judgment to select and furnish the goods in question for such use.

19.     That when RainMaker furnished such goods, it impliedly warranted that the goods were fit for the particular programs for which they were purchased and impliedly warranted that the goods were merchantable.

- 4 -

20.     In fact, the goods provided failed in most respects to upgrade the software systems KSN had in place prior to the purchase previously described. For example:

a.     The RainMaker systems were supposed to be fast with virtually no "load time". In fact, the system was much slower than the system it replaced and took multiple minutes to perform functions which previously took seconds.

b.     The RainMaker product was supposed to merge information from fields within its software goods into Microsoft Word templates and print letters automatically without requiring proof reading. In fact, this never occurred, either for simple or complex letters.

c.     The RainMaker software goods were supposed to send tasks that needed to be done to Microsoft's Outlook Task function section. In fact, this occurred only randomly and was thus unreliable.

d.     The RainMaker goods were supposed to eliminate duplication on collection matters. In fact, the RainMaker goods did not.

e.     The RainMaker goods were supposed to perform spell checks on both bills and reports. In fact, it only performed this function on bills.

f.     The RainMaker goods were supposed to convert to Microsoft Word, such as to be able to print a report be edited to send by KSN clients. In fact, it did not convert to Word in a form which could be edited and sent to clients.

g.     The RainMaker goods were supposed to provide for the automatic production of status reports to be done overnight. In fact, this could not be done automatically, and reports had to be done manually.

- 5 -

h.      The RainMaker software goods were supposed to differentiate between billable and non-billable tasks and automatically bill only billable tasks. In fact, the RainMaker goods could not do this.

i.      When KSN prepared bills suing RainMaker's software, no other functions, such as accounting reports and status reports, could be performed. Doing bills for just the Community Association part of KSN's practice took thirteen hours. Therefore, KSN's billing was consistently late.

j.      Numerous accounting issues occurred which had not previously occurred using KSN's previous software.

k.      RainMaker had approved KSN's hardware prior to KSN's conversion to the use of RainMaker's software goods. Yet, because of the numerous problems, RainMaker informed KSN that it needed to spend an additional $43,000.00 to purchase hardware to make the RainMaker goods function properly.

l.      RainMaker promised to provide a Litigation Management program, which it never did.

21.     By virtue of these defects aforesaid, RainMaker's goods do not work on KSN's hardware. Therefore, RainMaker's goods are not merchantable and are not fit for the purpose intended.

22.     KSN has performed, as required under the Complaint Exhibits "A" and "B" given the circumstances of RainMaker's lack of performance.

WHEREFORE, Kovitz Shifrin Nesbit, P.C. demands judgment in its favor and against RainMaker Software, Inc. in the amount of $106,494.89 and its costs of suit.

- 6 -

## COUNT II

### CONSUMER FRAUD

23.     KSN realleges and incorporates by reference paragraphs 1-20 inclusive of

this Complaint as paragraph 23 of this Count II as though fully set forth herein.

24.     KSN asserts a claim under the Illinois Consumer Fraud Act, 815 ILCS

505/2 et. seq. (hereinafter the "CFA") as a supplemental claim.

25.     At all relevant times herein, Section 505/2 of the CFA provides in

pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices,
> including but not limited to the use or employment of any deception,
> fraud, false pretenses, false promise, misrepresentation or the
> concealment, suppression or omission of any material fact, with the intent
> that others rely upon the concealment, suppression or omission of such
> material fact, or the use or employment of any practice described in
> Section 2 of the "Uniform Deceptive Trade Practices Act", . . .in the
> conduct of any trade or commerce, are hereby declared unlawful whether
> any person has in fact been mislead, deceived or damaged thereby . . . .

26.     Section 505/10(a) of the Act provided in relevant part:

> (a) Any person who suffers damage as a result of a violation of this Act
> committed by any other person may bring an action against such person.
> The court, in its discretion may award actual damages or any other relief
> which the court deems proper.

27.     RainMaker employees, Sandy Schley, Todd Lotzer and Shellie Manvel

made the following false promises or representations on or about January 14, 2004 and

thereafter through May, 2005, among others:

    a.     That the hardware KSN had was sufficient to meet the RainMaker

software goods needs. After KSN paid in excess of $106,000.00 on account, and

numerous problems arose, RainMaker proposed hardware enhancements, amounting to

$43,000.00, to make its software goods function properly.

b.      That KSN's paper usage would be decreased with the use of the RainMaker software goods. In fact, KSN's paper usage increased.

c.      KSN's previous software caused bank reconciliation problems. RainMaker promised that these reconciliation problems would not occur. RainMaker's software goods did not provide any bank reconciliations at all.

d.      RainMaker's aforesaid employees had promised to provide an "Alert System" for its software "Summit Export", which crashed often after installation. RainMaker never provided such an "Alert System". When Summit Export crashed, it wiped out docketing information of individual KSN attorney's calendar programs.

e.      Case templates were developed by KSN employees which would be used for KSN's litigation case management needs. RainMaker promised to install these templates in KSN's RainMaker software. RainMaker never kept is promise.

f.      Reports "on the fly" were supposed to be provided by the RainMaker goods. Instead, "canned" reports were provided and "reports on the fly" could not be produced.

g.      RainMaker employees promised that its systems would automatically do billing, demand letters, lien forms and send to KSN clients either by regular mail or email, as the client desired, from the same screen. In fact, this could never be accomplished.

h.      RainMaker employees promised that its system could automatically enter billing time when a task function for a client was requested. In fact, its goods could not do this.

- 8 -

     i.      RainMaker employees promised that its goods would enable KSN clients to have internet access to status reports on their matters. In fact, this never occurred, nor could it, given the many deficiencies as described aforesaid in the RainMaker goods.

28.     The aforesaid information and promises provided by Schley, Lotzer and Manvel were false and misleading.

29.     The above referenced acts and practices occurred in the conduct of trade and commerce involving consumers, and with the intent that prospective purchasers rely upon their misrepresentations, promotions, concealments, suppression and/or omissions.

30.     KSN relied on the promises and representations by RainMaker aforesaid and as a direct and proximate result of the violations of CFA was damaged in the amount of $106,494.89 out of pocket expenses and as well as resulting consequential damages, such as for example, that resulting from late billing to clients and hiring extra employees.

WHEREFORE, Kovitz Shifrin Nesbit, P.C. requests judgment in its favor and against RainMaker Software, Inc. as follows:

A.     Damages in the amount of $106,494.89 and its costs of suit.

B.     Damages for consequential and incidental costs resulting from RainMaker's actions as determined at trial.

C.     Punitive damages in an amount to be determined by the Court and at trial.

D.     Reasonable attorneys' fees as determined by the Court.

- 9 -

E.   Such other relief as this Court deems equitable, just and proper.

KOVITZ SHIFRIN NESBIT, P.C.

By _____

Richard W. Hillsberg
One of Its Attorneys

Richard W. Hillsberg
Kovitz Shifrin Nesbit
750 Lake Cook Road, Suite 350
Buffalo Grove, IL  60089
847/537-0500
ARDC No. 1219030

- 10 -

**Computer Law Systems, Inc.**
10400 Viking Drive, Suite 250
Eden Prairie, MN 55344
(952) 941-3801

AGREEMENT NO. 2742

PROPOSAL NO. _____

## AGREEMENT FOR COMPUTER SOFTWARE LICENSE

Licensee: Kovitz Shifrin Nesbit

Address: 750 W. Lake Cook Road, Suite 350, Buffalo Grove, IL 60089-2073

COMPUTER LAW SYSTEMS, INC. (hereafter referred to as CLS) agrees to furnish to above LICENSEE (hereafter referred to as LICENSEE) at the above address the software listed on attached Exhibit in accordance with the terms of this Agreement and the above Proposal No.

**1. DELIVERY AND SHIPPING**

CLS will deliver the computer software to LICENSEE at the installation address. CLS will arrange for and prepay transportation.

**2. PRICES, ADDITIONS AND TAXES**

Any additions or changes in products or service described herein requested or required by LICENSEE and accepted by CLS, will be charged at additional cost to LICENSEE at CLS' current prices for such additional products or services. If a LICENSEE cancels all or part of a purchase order between execution of the agreement and shipment of the software, a re-inventory charge of thirty-five percent (35%) of that portion of the purchase price will be paid by the LICENSEE.

All prices and charges to LICENSEE are subject to all prevailing[1] taxes. Additionally, LICENSEE will be responsible for sales and use tax paid or payable by CLS in connection with the performance of this Agreement. All transportation, meals, and lodging expenses for LICENSEE'S personnel, and/or CLS personnel will be borne by LICENSEE.[2]

**3. TITLE**

Title to all software licensed hereunder will remain vested in CLS until the full purchase price and additions have been paid. CLS will have all rights of a secured party, including the right to file a financing statement under the Uniform Commercial Code (signed by LICENSEE) to protect its security interest. LICENSEE will assist in such filing.

**4. TERMS**

~~Ninety Percent (90%) of the Purchase Price (software, conversion, training, and implementation support) will be due upon approval of this Agreement for the Computer Software License. Ten percent (10%) of the Purchase Price will be due upon installation of the software on the LICENSEE's hardware. Additional training, systems management and consulting, expenses, taxes, etc., will be due upon the LICENSEE's receipt of CLS' statement. Late payments not received within 30 days of the invoice date will be subject to a finance charge of one-and-one half (1 1/2) percent per month. Prices are subject to change at any time without prior notice.~~[3]

**5. SITE PREPARATION**

LICENSEE will have the computer hardware, operating system, database (e.g. NT, SQL Server), and remote communications (e.g. modem) installed and operational prior to the installation of CLS software, at LICENSEE's expense and in accordance with the requirements of the hardware and operating system manufacturer's and CLS' specifications. All sites must include approved equipment configurations, an uninterruptible power supply and remote communications for remote diagnostics.

For purposes of CLS' installation and testing of software on-site, CLS' personnel will have access to the installation site and the equipment during normal working hours. Installation and related expenses are billed to the organization at CLS' current technical support rates.

**6. IMPLEMENTATION SERVICES**

CLS will furnish initial implementation services for LICENSEE at costs specified in the attached Exhibit. Upon LICENSEE's request, CLS will provide additional services for LICENSEE's personnel at CLS' location and/or LICENSEE's location at CLS' then current rates. All transportation, meals and lodging expenses for LICENSEE's personnel and/or CLS' personnel will be borne by LICENSEE.[4]

**7. CLS' PROPRIETARY PROGRAMS**

LICENSEE will receive its licensed copy of CLS' proprietary programs on a machine-readable media in object code format. LICENSEE will also receive an electronic set of CLS' user documentation. CLS' PEP provides software maintenance for CLS Software, including software updates, enhancements, and documentation. LICENSEE will subscribe to CLS' Product Enhancement Program (PEP) as described in the related Agreement for Product Enhancement Program and Priority Service Program.[5]

CLS programs and documentation are trade secrets and proprietary property of CLS. LICENSEE acknowledges and agrees that all right, title and interest in and to CLS' programs and all copies thereof are and remain the sole and exclusive property of CLS. This Agreement grants LICENSEE non-exclusive, non-transferable rights to use CLS' proprietary programs on its in-house computer to process LICENSEE's data, and does not grant LICENSEE

1: See Addendum A(1)

2: See Addendum A(2)

3: See Addendum A(3)

4: See Addendum A(4)

5: See Addendum A(5)

**EXHIBIT**

A

277364\1

any rights to copy, reproduce or resell CLS' proprietary programs or provide any programs or service via CLS' proprietary programs, other than archival copies.

## 8. WARRANTIES

CLS warrants that LICENSEE will acquire good and clear title to the software license being purchased by LICENSEE and that it is free and clear of all liens and encumbrances, except for CLS' security interest and liens created by LICENSEE.

CLS warrants that CLS software will operate on CLS-approved hardware.

## 9. INDEMNIFICATION

CLS indemnifies and saves LICENSEE harmless from any loss or damage to the person or property of LICENSEE that may be caused by CLS or its employees and agents during the installation of the software. LICENSEE will indemnify and save CLS harmless from any loss or damage to the person or property of CLS or its employees or agents during such installation caused by LICENSEE, its employees or agents. CLS will not be liable for any injury caused by the negligence of LICENSEE, its employees or agents nor for any injury resulting from negligent or unauthorized operation of the software at any time or from any injury occurring after LICENSEE has taken title to CLS software license.

## 10. CONFIDENTIAL AND CLS PROPERTY

Unless specifically provided for in this Agreement, no data processing, programming, formula or ideas developed by CLS, or by CLS and LICENSEE during the performance of its services under this Agreement, will be considered confidential, and CLS will be free to use all such items and any related information during the term of this Agreement and thereafter in any way that CLS deems fit.

## 11. LICENSEE'S PROPERTY

All data and similar information which is LICENSEE's confidential data and which is exposed to or processed by CLS in fulfilling this Agreement will be and remain the sole property of LICENSEE. CLS recognizes the confidential nature of matters handled by LICENSEE and also the confidential nature of LICENSEE's operations. CLS agrees to handle all LICENSEE's information as LICENSEE's confidential data.

## 12. LIABILITIES

~~CLS will be liable for the loss, destruction or damage to data and materials furnished by LICENSEE only if such loss,~~ ~~destruction or damage was due to the negligence of CLS or its employees and then only to the extent of restoring the lost, destroyed or damaged materials, provided that such restoration can be reasonably performed by CLS, and LICENSEE has furnished CLS with all source data necessary for such restoration.~~

~~CLS' liability arising out of the use of the software program will in no event exceed the initial purchase of the software. Under no circumstances will CLS be liable for incidental or consequential damage of any kind.[6]~~

> 6: See Addendum A(6)

## 13. TRANSFERABILITY

This Agreement is not transferable by either party without the prior written permission of the other, which permission may not be unreasonably withheld. Upon such transfer, the obligations of the former party must be assumed by the transferee.

## 14. GENERAL

This document together with Exhibit A and Addendums A and B attached hereto constitutes the entire Agreement between the parties with respect to the subject matter. There are no understandings, representations, agreements or warranties expressed or implied, by operation of law or otherwise, except as expressly stated herein. The provisions, terms and conditions of this Agreement will prevail over any provisions, terms and conditions contained in any order submitted by LICENSEE which are in variance therewith. This Agreement will not be modified, amended, rescinded, canceled or waived, in whole or in part, except in writing signed by the parties.

CLS agrees that in the event CLS or its successors ceases to do business, it will provide LICENSEE with a copy of the source code at no cost. In this event, the LICENSEE's non-exclusive, non-transferable rights to the CLS proprietary programs and other conditions as specified in Paragraph 7 will continue.

CLS holds source code in escrow with a third party escrow agent.

This Agreement will be binding on the successors and assigns of the parties, except as provided herein for assignment of this Agreement. This Agreement will only be complete and binding on the parties after approval and signing by an officer of CLS at its corporate offices set forth herein.

In witness whereof this Agreement has been duly executed by the parties hereto as of the date hereof:

Accepted By:

LICENSEE

_____ 10/26/04
Authorizer's Signature            Date

ROBERT A. STEINBERG
Name and Title
Managing Principal

Rev 0102

Accepted By:

COMPUTER LAW SYSTEMS, INC.

_____ 10/26/04
Officer's Signature               Date

STEPHEN D SCHLEY, PRESIDENT
Name and Title

**Computer Law Systems, Inc.**
10400 Viking Drive, Suite 250
Eden Prairie MN 55344
(952) 941-3801

AGREEMENT NO.  2742

PROPOSAL NO. _____

## EXHIBIT A -- AGREEMENT FOR COMPUTER SOFTWARE LICENSE

Licensee:  Kovitz Shifrin Nesbit

Address:  750 W. Lake Cook Road, Suite 350, Buffalo Grove, IL 60089-2073

**Software Purchase (30 Attorneys/60 Timekeepers):**

| | |
|---|---:|
| CLS/SUMMIT Database/Administrator/Manager | $ 3,200. |
| CLS Entidex | 3,200. |
| CLS Conflict Checking | 3,200. |
| CLS Docket/Calendar | 3,200. |
| CLS Case Manager | 9,700. |
| CLS File Management | 3,200. |
| CLS Archive Management | 3,200. |
| CLS TimeSheet | 3,200. |
| CLS Time Import | 1,600. |
| CLS Time & Billing | 9,700. |
| CLS Accounts Payable | 3,200. |
| CLS General Ledger | 3,200. |
| CLS Trust Accounting | 3,200. |
| CLS Collections | 3,200. |
| CLS Collections Accounting | 3,200. |
| CLS Integration with Document Management (iManage) | 1,600. |
| CLS Integration with Scheduling (Outlook Calendar and Contacts) | 3,200. |
| CLS Integration with Spreadsheets (Excel) | 1,600. |
| CLS Integration with Word Processing (Word) | 1,600. |
| CLS Integration with Other Third Party Products | T/M. |
| **Software Total** | **$67,400.** |
| *Less: Showcase Consideration for Collections Accounting* | *(3,200.)* |
| **Total** | **$64,200.** |
| Software Set-Up Support | $2,000. |

| | |
|---|---:|
| **Conversion** | **$25,000.** |

**Implementation Planning, Support and Training:**
~~CLS offers Training at $158/Hour; Project Management at $158/Hour; and Programming at $225/Hour for all Implementation~~
~~Services. These rates are valid for the calendar year in which the contract is executed.~~ [7] Please consult CLS' current Professional
Services factsheet for a full list of additional CLS services and the associated pricing.

7: See
Addendum
A(7)

Accepted By:

LICENSEE

_____  10/20/04
Authorizer's Signature          Date

ROBERT A. STERNBERG
Name and Title
*Managing Principal*

Rev 0102

Accepted By:

COMPUTER LAW SYSTEMS, INC.

_____  10/26/04
Officer's Signature          Date

STEPHEN D SCHLEY, PRESIDENT
Name and Title

**Computer Law Systems Contract #2742**
**ADDENDUM A**

1.      Section 2 – In the first sentence of the second paragraph, the word "prevailing" shall be replaced with "applicable Illinois".

2.      Section 2 – Add to the last sentence of the second paragraph #2: "subject to prior written approval of LICENSEE."

3.      Replace Section 4 with:

> "The purchase price of the software, less $6,400.00, will be due upon approval of this Agreement for the Computer Software License. The remaining balance of $6,400.00 will be due upon completion of the modifications of the software for the LICENSEE's Condo/Collection Department (see Addendum B, #5). Other services, such as training, systems management, consulting, expenses, taxes, etc., will be billed as incurred. Payments not received within thirty (30) days of the invoice date will be subject to a finance charge of one-and-one-half percent (1-½%) per month.

4.      Section 6 – Add to the last sentence of this Section: "subject to prior written approval of LICENSEE."

5.      Section 7 – Add to the end of the first paragraph: "Prices are not subject to change during the implementation process."

6.      Replace Section 12 with:

> "CLS will be liable for the loss, destruction or damage to data and materials furnished by LICENSEE only if such loss, destruction or damage was due to the negligence of CLS or its employees. CLS will restore the lost, destroyed or damaged materials, provided that such restoration can be reasonably performed by CLS, and LICENSEE has furnished CLS with all source data necessary for such restoration.

> "CLS' liability arising out of the use of the software program will in no event exceed the monies paid to CLS by LICENSEE for the initial purchase of software and services (excluding out-of-pocket expenses paid by CLS) as outlined on Exhibit A - Agreement for Computer Software License and Exhibit A - Agreement for Product Enhancement Program and Priority Service Program. Under no circumstances will CLS be liable for incidental or consequential damage of any kind exceeding the monies paid to CLS by LICENSEE for this initial purchase of software and services (excluding out-of-pocket expenses paid by CLS)."

7.      Exhibit A – Implementation Planning, Support and Training, the first two sentences of this section are replaced with: "CLS offers Training at $158.00/Hour; Project Management at $158.00/Hour; and all Conversion Services will be billed at a fixed rate of $25,000.00. These rates are valid through the completion of the Implementation process."

**Computer Law Systems Contract #2742**
**ADDENDUM B**

## CLS Commitments

CLS agrees to provide the following at no additional cost to Licensee:

1. Provide a "Next Contact Date" on the Collections Screen

2. Provide a "Range" option for queries on Dates/Amounts on the Collections Screen

3. Provide access to the Docket/Calendar from the Collections Screen and File Management Screen

4. Provide access to documents from the Docket/Calendar Screen

5. Create functionality within the Case/Matter Management System to prompt the user regarding automatic billing with attached documents/non-billing (based on/triggered by the performance of a billable task).

6. Create firm-specific docket reports during the implementation process

7. CLS will work with firm's internal technical personnel or contract personnel to accommodate online client access according to mutually established guidelines.

8. Put together plan for getting all of the firm's "contacts" (property managers, shareholders, officers, directors and other contacts) into the CLS System.

**Computer Law Systems, Inc.**
10400 Viking Drive, Suite 250
Eden Prairie MN 55344
(952) 941-3801

AGREEMENT NO. 2742-A

PROPOSAL NO._____

## AGREEMENT FOR PRODUCT ENHANCEMENT PROGRAM AND PRIORITY SERVICE PROGRAM

Licensee: Kovitz Shifrin Nesbit

Address: 750 W. Lake Cook Road, Suite 350, Buffalo Grove, IL 60089-2073

Effective Date:

Related Agreement Number:

COMPUTER LAW SYSTEMS, INC. (hereafter referred to as CLS) agrees to furnish to above LICENSEE (hereafter referred to as LICENSEE) at the above address the preventive and remedial maintenance on the computer software listed on attached Exhibit in accordance with the terms of this Agreement and the above Proposal No.

### 1. RELATED AGREEMENT

The parties hereto have consummated related Agreements. They provide that LICENSEE will have the licensed right to use all specified modules of the software system including computer programs, documentation and other elements sometimes called CLS/SUMMIT: The Integrated Legal Solution (hereinafter called "SYSTEM"). This Agreement does not change or supersede the terms of such Agreement.

### 2. PURPOSE OF THIS AGREEMENT

CLS agrees to provide service for the payments specified herein. Services include CLS' application modules installed on the computer system, including run-time and excluding hardware, operating system, and database (e.g. NT, SQL Server).

Software Service will include consultation assistance as described in Paragraph 6 and periodically distributed program updates as described in Paragraph 7.

### 3. TERM OF AGREEMENT

This Agreement will become effective on January 1, 2005, will remain in effect for the specified Service Period and will continue thereafter until terminated by either party on 30-day prior written notice to the other party; except that CLS can terminate this Agreement by a 15-day prior written notice if payments due to CLS by LICENSEE under this agreement are not paid "current". Current means receipt of invoice payment at CLS within 30 days of the invoice date. ~~Prices are subject to change at any time.~~[1]

### 4. PRICE PROTECTION

CLS agrees to price protection for LICENSEE. Charges will not be adjusted more frequently than annually. Such adjustments to CLS' standard maintenance rates will not exceed ~~fifteen (15%)~~[2] per annum.

### 5. PAYMENT

LICENSEE will make advance monthly nonrefundable payment(s) beginning with the effective date of this Agreement. In addition, LICENSEE will pay any additional special charges incurred for (a) assistance provided by CLS, (b) out-of-pocket travel expenses as described in Paragraph

6, and (c) taxes as described in Paragraph 10. Late payments not received within 30 days of the invoice date will be subject to a finance charge of one-and-one-half (1-1/2) percent per month.

### 6. SERVICES

CLS will provide support specified in the attached Exhibit to assist LICENSEE with questions, installation or updates, use of unfamiliar features or options, or any other subject requested by LICENSEE in relation to SYSTEM. Assistance in excess of these hours will require prior purchase of additional blocks of time or an Agreement for Service with prior approval by LICENSEE and CLS.

CLS' assistance will occur by conversations by telephone and by direct computer-to-computer access by telephone and/or Internet. Onsite assistance may also be requested by LICENSEE. In such cases, LICENSEE will reimburse CLS for the reasonable out-of-pocket travel expenses, including lodging and food. No travel will be initiated by CLS without LICENSEE's prior approval.

### 7. SYSTEM UPDATES

CLS' SYSTEM provides LICENSEE with many options through parameter selections. By this method, LICENSEE can customize the standard system for specific operational functions. This permits CLS to maintain one standard SYSTEM for all LICENSEES, in order to eliminate the costs associated with multiple special versions. For this reason, LICENSEE agrees during the term of this Agreement that all changes to the standard system will be provided by CLS as a standard change to the SYSTEM. LICENSEE will make no system changes except those approved specifically by CLS and done through CLS.

The SYSTEM is a modular design, and LICENSEE has acquired from CLS the rights to use the modules specified in Paragraph 1 and on the attached Exhibit.

### 8. DEFECTS

It is the responsibility of LICENSEE to recognize any defects related to SYSTEM processing, including defects in updates and any other SYSTEM or assistance defects and inform CLS accordingly. However, CLS will use professional care in its assistance.

1: See Addendum A(1)

2: See Addendum A(2)

277364\1

#### 9. LIMITATION OF LIABILITY

The liability of CLS hereunder, for any defects or damages to LICENSEE or others, will in no event exceed, in the aggregate, the total maintenance fees paid by LICENSEE during the previous twelve (12) month period. ~~Under no circumstances will CLS be liable for incidental or consequential damages of any kind.~~ CLS makes no other warranty or guarantee of any kind other than set forth in this Agreement or the Related Agreements.

#### 10. TAXES

LICENSEE agrees to pay all fees, charges, or taxes including sales and use taxes imposed by a governmental agency (municipal, state, etc.) upon the payments or services called for under the terms of this Agreement.

#### 11. TRANSFERABILITY

This Agreement is not transferable by either party without the prior written permission of the other, which permission may not be unreasonably withheld. Upon such transfer, the obligations of the former party must be assumed by the transferee.

#### 12. GENERAL

This document together with Exhibit A and Addendum A attached hereto constitutes the entire Agreement between the parties with respect to the subject matter. There are no understandings, representations, agreements or warranties expressed or implied, by operation of law or otherwise, except as expressly stated herein or in the Related Agreements. The provisions, terms and conditions of this Agreement will prevail over any provisions, terms and conditions contained in any other submitted by LICENSEE which are in variance therewith. This Agreement will not be modified, amended, rescinded, canceled or waived, in whole or in part, except in writing signed by the parties.

This Agreement will be binding on the successors and assigns of the parties, except as provided herein for assignment of this Agreement. This Agreement will only be complete and binding on the parties after approval and signing by an officer of CLS at its corporate offices.

In witness whereof this Agreement has been duly executed by the parties hereto as of the date hereof:

Accepted By:

LICENSEE

_____ 10/20/04
Authorizer's Signature                    Date

ROBERT A. STERNBERG
Name and Title
Managing Principal

Rev 0102

Accepted by:

COMPUTER LAW SYSTEM, INC.

_____ 10/26/04
Officer's Signature                    Date

STEPHEN D SCHLEY, PRESIDENT
Name and Title

277364\1

**Computer Law Systems, Inc.**
10400 Viking Drive, Suite 250
Eden Prairie MN 55344
(952) 941-3801

AGREEMENT NO.  2742-A

PROPOSAL NO.  _____

### EXHIBIT A – AGREEMENT FOR PRODUCT ENHANCEMENT PROGRAM
### AND PRIORITY SERVICE PROGRAM

Licensee:  Kovitz Shifrin Nesbit

Address:  750 W. Lake Cook Road, Suite 350, Buffalo Grove, IL 60089-2073

**Product Enhancement Program (PEP) for Software Products**
CLS/SUMMIT Database/Administrator/Manager
CLS Entidex
CLS Conflict Checking
CLS Docket/Calendar
CLS Case Manager
CLS File Management
CLS Archive Management
CLS TimeSheet
CLS Time Import
CLS Time & Billing
CLS Accounts Payable
CLS General Ledger
CLS Trust Accounting
CLS Collections
CLS Collections Accounting
CLS Integration with Document Management (iManage)
CLS Integration with Scheduling (Outlook Calendar and Contacts)
CLS Integration with Spreadsheets (Excel)
CLS Integration with Word Processing (Word)

**Product Enhancement Program (PEP) Monthly Fee**                                                    $1,011.

**Help Desk and Technical Support Fee**  (Twelve Months)

40 Hours             $6,480.

These blocks of hours can be used for Help Desk and Technical Support Services at any time during a 12-month period.  Support
Services can be purchased in increments of 10 Hours, with discounts applied to a purchased block of 40 hours.  Please consult
CLS' current Professional Services factsheet for a full list of additional CLS services and the associated pricing.

Accepted By:

LICENSEE

_Signature_  10/20/04
Authorizer's Signature                Date

_ROBERT A. STERNBERG_
Name and Title
_Managing Principal_

Rev 0102

Accepted By:

COMPUTER LAW SYSTEMS, INC.

_Signature_  10/26/04
Officer's Signature                Date

_STEPHEN D SCHLEY, PRESIDENT_
Name and Title

**Computer Law Systems Contract #2742-A**
**ADDENDUM A**

1.      Section 3 – The last sentence of this Section shall be replaced with: "Prices may only be changed upon sixty (60) days prior written notice."

2.      Section 4 – In the last sentence of this Section, "fifteen (15%)" shall be replaced with "five percent (5%)".

**Computer Law Systems, Inc.**
10400 Viking Drive, Suite 250
Eden Prairie MN 55344
(952) 941-3801

AGREEMENT NO. 2742-A

PROPOSAL NO._____

## AGREEMENT FOR PRODUCT ENHANCEMENT PROGRAM AND PRIORITY SERVICE PROGRAM

Licensee: Kovitz Shifrin Nesbit

Address: 750 W. Lake Cook Road, Suite 350, Buffalo Grove, IL 60089-2073

Effective Date:

Related Agreement Number:

COMPUTER LAW SYSTEMS, INC. (hereafter referred to as CLS) agrees to furnish to above LICENSEE (hereafter referred to as LICENSEE) at the above address the preventive and remedial maintenance on the computer software listed on attached Exhibit in accordance with the terms of this Agreement and the above Proposal No.

### 1. RELATED AGREEMENT

The parties hereto have consummated related Agreements. They provide that LICENSEE will have the licensed right to use all specified modules of the software system including computer programs, documentation and other elements sometimes called CLS/SUMMIT: The Integrated Legal Solution (hereinafter called "SYSTEM"). This Agreement does not change or supersede the terms of such Agreement.

### 2. PURPOSE OF THIS AGREEMENT

CLS agrees to provide service for the payments specified herein. Services include CLS' application modules installed on the computer system, including run-time and excluding hardware, operating system, and database (e.g. NT, SQL Server).

Software Service will include consultation assistance as described in Paragraph 6 and periodically distributed program updates as described in Paragraph 7.

### 3. TERM OF AGREEMENT

This Agreement will become effective on January 1, 2005, will remain in effect for the specified Service Period and will continue thereafter until terminated by either party on 30-day prior written notice to the other party; except that CLS can terminate this Agreement by a 15-day prior written notice if payments due to CLS by LICENSEE under this agreement are not paid "current". Current means receipt of invoice payment at CLS within 30 days of the invoice date. ~~Prices are subject to change at any time.~~ [1]

**1: See Addendum A(1)**

### 4. PRICE PROTECTION

CLS agrees to price protection for LICENSEE. Charges will not be adjusted more frequently than annually. Such adjustments to CLS' standard maintenance rates will not exceed ~~fifteen (15%)~~ per annum. [2]

**2: See Addendum A(2)**

### 5. PAYMENT

LICENSEE will make advance monthly nonrefundable payment(s) beginning with the effective date of this Agreement. In addition, LICENSEE will pay any additional special charges incurred for (a) assistance provided by CLS, (b) out-of pocket travel expenses as described in Paragraph

6, and (c) taxes as described in Paragraph 10. Late payments not received within 30 days of the invoice date will be subject to a finance charge of one-and-one-half (1-1/2) percent per month.

### 6. SERVICES

CLS will provide support specified in the attached Exhibit to assist LICENSEE with questions, installation or updates, use of unfamiliar features or options, or any other subject requested by LICENSEE in relation to SYSTEM. Assistance in excess of these hours will require prior purchase of additional blocks of time or an Agreement for Service with prior approval by LICENSEE and CLS.

CLS' assistance will occur by conversations by telephone and by direct computer-to-computer access by telephone and/or Internet. Onsite assistance may also be requested by LICENSEE. In such cases, LICENSEE will reimburse CLS for the reasonable out-of-pocket travel expenses, including lodging and food. No travel will be initiated by CLS without LICENSEE's prior approval.

### 7. SYSTEM UPDATES

CLS' SYSTEM provides LICENSEE with many options through parameter selections. By this method, LICENSEE can customize the standard system for specific operational functions. This permits CLS to maintain one standard SYSTEM for all LICENSEES. In order to eliminate the costs associated with multiple special versions. For this reason, LICENSEE agrees during the term of this Agreement that all changes to the standard system will be provided by CLS as a standard change to the SYSTEM. LICENSEE will make no system changes except those approved specifically by CLS and done through CLS.

The SYSTEM is a modular design, and LICENSEE has acquired from CLS the rights to use the modules specified in Paragraph 1 and on the attached Exhibit.

### 8. DEFECTS

It is the responsibility of LICENSEE to recognize any defects related to SYSTEM processing, including defects in updates and any other SYSTEM or assistance defects and inform CLS accordingly. However, CLS will use professional care in its assistance.

277364\1

## 9. LIMITATION OF LIABILITY

The liability of CLS hereunder, for any defects or damages to LICENSEE or others, will in no event exceed, in the aggregate, the total maintenance fees paid by LICENSEE during the previous twelve (12) month period. ~~Under no circumstances will CLS be liable for incidental or consequential damages of any kind.~~ CLS makes no other warranty or guarantee of any kind other than set forth in this Agreement or the Related Agreements.

## 10. TAXES

LICENSEE agrees to pay all fees, charges, or taxes including sales and use taxes imposed by a governmental agency (municipal, state, etc.) upon the payments or services called for under the terms of this Agreement.

## 11. TRANSFERABILITY

This Agreement is not transferable by either party without the prior written permission of the other, which permission may not be unreasonably withheld. Upon such transfer, the obligations of the former party must be assumed by the transferee.

## 12. GENERAL

This document together with Exhibit A and Addendum A attached hereto constitutes the entire Agreement between the parties with respect to the subject matter. There are no understandings, representations, agreements or warranties expressed or implied, by operation of law or otherwise, except as expressly stated herein or in the Related Agreements. The provisions, terms and conditions of this Agreement will prevail over any provisions, terms and conditions contained in any other submitted by LICENSEE which are in variance therewith. This Agreement will not be modified, amended, rescinded, canceled or waived, in whole or in part, except in writing signed by the parties.

This Agreement will be binding on the successors and assigns of the parties, except as provided herein for assignment of this Agreement. This Agreement will only be complete and binding on the parties after approval and signing by an officer of CLS at its corporate offices.

In witness whereof this Agreement has been duly executed by the parties hereto as of the date hereof:

Accepted By:

LICENSEE

_Authorizer's Signature_     10/20/04 Date

_ROBERT A. STERNBERG_
Name and Title
_Managing Principal_

Rev 0102

Accepted by:

COMPUTER LAW SYSTEM, INC.

_Officer's Signature_     10/26/04 Date

_STEPHEN D SCHLEY, PRESIDENT_
Name and Title

277364\1

**Computer Law Systems, Inc.**
10400 Viking Drive, Suite 250
Eden Prairie MN 55344
(952) 941-3801

AGREEMENT NO.  2742-A

PROPOSAL NO.  _____

## EXHIBIT A – AGREEMENT FOR PRODUCT ENHANCEMENT PROGRAM AND PRIORITY SERVICE PROGRAM

Licensee:  Kovitz Shifrin Nesbit

Address:  750 W. Lake Cook Road, Suite 350, Buffalo Grove, IL 60089-2073

**Product Enhancement Program (PEP) for Software Products**
CLS/SUMMIT Database/Administrator/Manager
CLS Entidex
CLS Conflict Checking
CLS Docket/Calendar
CLS Case Manager
CLS File Management
CLS Archive Management
CLS TimeSheet
CLS Time Import
CLS Time & Billing
CLS Accounts Payable
CLS General Ledger
CLS Trust Accounting
CLS Collections
CLS Collections Accounting
CLS Integration with Document Management (iManage)
CLS Integration with Scheduling (Outlook Calendar and Contacts)
CLS Integration with Spreadsheets (Excel)
CLS Integration with Word Processing (Word)

**Product Enhancement Program (PEP) Monthly Fee**                                                    $1,011.

**Help Desk and Technical Support Fee** (Twelve Months)

40 Hours         $6,480.

These blocks of hours can be used for Help Desk and Technical Support Services at any time during a 12-month period.  Support Services can be purchased in increments of 10 Hours, with discounts applied to a purchased block of 40 hours.  Please consult CLS' current Professional Services factsheet for a full list of additional CLS services and the associated pricing.

Accepted By:

LICENSEE

_WWStuckey_  10/20/04
Authorizer's Signature          Date

_ROBERT A. STERNBERG_
Name and Title
_Managing Principal_

Rev 0102

Accepted By:

COMPUTER LAW SYSTEMS, INC.

_Stephen Oschley_  10/26/04
Officer's Signature          Date

_STEPHEN O SCHLEY, PRESIDENT_
Name and Title

277364\1

## Computer Law Systems Contract #2742-A
### ADDENDUM A

1.     Section 3 – The last sentence of this Section shall be replaced with: "Prices may only be changed upon sixty (60) days prior written notice."

2.     Section 4 – In the last sentence of this Section, "fifteen (15%)" shall be replaced with "five percent (5%)".

277364\1

**Add-on Products and Services Purchase Agreement**

RainMaker Software, Inc.

**CUSTOMER:  Kovitz Shifrin & Nesbit**

The Customer agrees to purchase and RainMaker agrees to provide the following products and services from RainMaker Software.

| Item/Description | Price |
|---|---|

**RainMaker Services**

**Project Management – Remote** planning, scheduling, on-going status
Communications (up to ½ day), design prototype document (up to 2 days)
and planning/preparation/follow-up to training pilot and production training
(up to ½ day):  40 Hours @ $158/Hour                                          $6,320

**Project Management – On-Site Design Meetings –**
January 17-20, 2005 (4 Days):  32 Hours @ $158/Hour          $5,056

**Training – On-Site Pilot** Administrator, Pilot User and Review of Preliminary
Conversion Data) March 7-11, 2005 and March 14-18, 2005
(two weeks, 10 days):  80 Hours @ $158/Hour                      $12,640

**Training – On Site Final** Conversion Training and End-User Case
Manager Training, April 18-22, 2005 (5 days):  40 Hours @ $158/Hour      $ 6,320

Services Total                                                                          $30,336

## Total Amount  $30,336

If the above services are completed in less time than estimated, the services total will be the lesser
amount, based on the actual hours worked at $158/Hour.

Payment:
Software amount due at execution of Agreement
Services, travel costs and sales taxes, if any are due upon receipt of invoice

Accepted for:

Customer  KOVITZ SHIFRIN NESBIT
by:_____ Date: 2/11/05
V.P.

RainMaker Software, Inc.
by:_____ Date: 7/2/05

```
EXHIBIT
    B
```

750 Lake Cook Road, Suite 350
Buffalo Grove, Illinois 60089
TEL: 847. 537. 0500
FAX: 847. 537. 0550
WEB: www.ksnlaw.net



**LAW OFFICES OF**

# KOVITZ SHIFRIN NESBIT

*A Professional Corporation*
April 5, 2005

134 North LaSalle Street, Suite 1600
Chicago, Illinois 60602
TEL: 312. 372. 3227
FAX: 312. 372. 4646

1220 Iroquois Avenue, Suite 100
Naperville, Illinois 60563
TEL: 630.717.6100
FAX: 630.548.5568

Reply To: Buffalo Grove

Writer's Direct No.: 847.777.7257

Writer's E-mail: smueller@ksnlaw.com

Ms. Sandra G. Schley
Vice President
Rainmaker Software, Inc.
14852 Scenic Heights Road, Suite 205
Eden Prairie, MN 55344

**Re:    Add-on Products and Services Purchase Agreement**

Dear Sandy:

Enclosed please find the signed Add-on Products and Services Purchase Agreement. Note that we have added text clarifying that this is not a new agreement, but merely a modification to the previously executed Agreement. Please sign the enclosed Agreement and return a copy of the fully executed Agreement to my attention.

Please contact me with any questions.

Thank you.

Sincerely,

Sharon Y. Mueller

SYM:lld
Enclosure

301620\1



**Add-on Products and Services Purchase Agreement**

RainMaker Software, Inc.

**CUSTOMER: Kovitz Shifrin & Nesbit**

The Customer agrees to purchase the following products and services from RainMaker Software.

| Item/Description | Price |
|---|---|
| **RainMaker Services** | |
| Onsite Case/Matter Management Training – 4/4–4/8 (40 Hours @ $158/Hour) | $6,320. |
| Onsite Pilot Financial Training – 4/18-4/22 (40 Hours @ $158/Hour) | $6,320. |
| Onsite Final Case/Matter Management and Financial Training – 5/23-5/27 (40 Hours @ $158/Hour) | $6,320. |
| Total | $18,960. |

**Total Amount $18,960.**

Payment:

> This April 5, 2005 Agreement does not represent any additional services or fees over and above the Add-on Products and Services Purchase Agreement previously signed by Robert A. Sternberg on February 11, 2005. This Agreement simply indicates changes to the dates for the **Training** portion of the February 11, 2005 Agreement.

Software amount due at execution of Agreement

Services, travel costs and sales taxes, if any are due upon receipt of invoice

Accepted for: Kovitz Shifrin Nesbit

Customer

by: _____ Date: April 5, 2005

Legal Administrator

RainMaker Software, Inc.

by: _____ Date: _____

3/31/2005


**RainMaker**

**Add-on Products and Services Purchase Agreement**

RainMaker Software, Inc.

**CUSTOMER: Kovitz Shifrin & Nesbit**

The Customer agrees to purchase the following products and services from RainMaker Software.

| Item/Description | Price |
|---|---|
| **RainMaker Services** | |
| Onsite Case/Matter Management Training – 4/4-4/8 (40 Hours @ $158/Hour) | $6,320. |
| Onsite Pilot Financial Training – 4/18-4/22 (40 Hours @ $158/Hour) | $6,320. |
| Onsite Final Case/Matter Management and Financial Training – 5/23-5/27 (40 Hours @ $158/Hour) | $6,320. |
| Total | $18,960. |

**Total Amount $18,960.**

Payment:

> This April 5, 2005 Agreement does not represent any additional services or fees over and above the Add-on Products and Services Purchase Agreement previously signed by Robert A. Sternberg on February 11, 2005. This Agreement simply indicates changes to the dates for the **Training** portion of the February 11, 2005 Agreement.

Software amount due at execution of Agreement

Services, travel costs and sales taxes, if any are due upon receipt of invoice

Accepted for: Kovitz Shifrin Nesbit

Customer

by:_____ Date: April 5, 2005

Legal Administrator

RainMaker Software, Inc.

by:_____ Date: 4/18/05

3/31/2005